IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

BYRON ANTHONY LOOPER                              Case No.  05-38187

       Debtor

MEMORANDUM ON UNITED STATES TRUSTEE'S
MOTION TO DISMISS AND ON DEBTOR'S
MOTION TO CORRECT THE FILING DATE OF PETITION

**APPEARANCES:**    Byron Anthony Looper
     Post Office Box 1000
     Petros, Tennessee  37845
     Debtor, *Pro Se*

    RICHARD F. CLIPPARD, ESQ.
    UNITED STATES TRUSTEE
     Patricia C. Foster, Esq.
     800 Market Street
     Suite 114
     Knoxville, Tennessee  37902
     Attorneys for United States Trustee

    G. WAYNE WALLS
     Post Office Box 22400
     Knoxville, Tennessee  37933
     Chapter 7 Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

The contested matters before the court are (1) the "Motion of United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 109(h)(1) and Notice of Hearing" (Motion to Dismiss), filed by the United States Trustee (U.S. Trustee) on October 28, 2005, asking the court to dismiss the Debtor's bankruptcy case based upon his failure to certify that he has received counseling from an approved non-profit budget and credit counseling agency, as required by 11 U.S.C. § 109(h)(1) (2005); and (2) the "Motion Requesting the Court to Order/Correct the Filing Date of Looper's Petition (and all) to (On or Before) 10/14/05; Motion in Opposition to the U.S. Trustee's Motion 'to Dismiss Case Pursuant to 11 U.S.C. § 109(h)(1) and Notice of Hearing [For 12/8/05]'" (Motion to Correct) filed by the Debtor, pro se, on December 5, 2005, asking the court to, pursuant to the "Prisoner Mailbox Rule," correct the filing date of his Voluntary Petition to reflect October 13, 2005, the date that he presented it to the prison officials for mailing to the court.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (O) (West 1993).

# I

On October 17, 2005, the court received, via United States Mail, and docketed for filing the handwritten Voluntary Petition, statements, and schedules commencing the Debtor's bankruptcy case under Chapter 7 of the Bankruptcy Code. These documents were signed by the Debtor on September 23, 2005, and September 28, 2005, utilizing the Official

Forms dated September 1997.[1]  The Debtor, a prisoner at the Brushy Mountain State Prison in Petros, Tennessee, who is serving a life sentence without the possibility of parole, was not represented by counsel and filed his bankruptcy case pro se.

The U.S. Trustee filed his Motion to Dismiss on October 28, 2005, stating that the Debtor did not meet the eligibility requirements to be a debtor under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), effective for all cases filed on or after October 17, 2005, because he did not obtain pre-petition consumer credit counseling from an approved nonprofit budget and credit counseling agency within the 180 days preceding the filing of his case, as required by 11 U.S.C. § 109(h)(1).

The Debtor subsequently filed his Motion to Correct on December 5, 2005, in response to the Motion to Dismiss.  The Debtor argues that, under the "Prisoner Mailbox Rule," the date upon which he presented his documents for mailing to the clerk's office, October 13, 2005, is the date upon which he is deemed to have filed his bankruptcy case, and therefore, his case is not subject to the provisions of BAPCPA, so he is not required to undergo a pre-petition consumer credit counseling briefing.  In the alternative, the Debtor asks the court to waive the consumer credit counseling requirement since he is incarcerated and does not have internet or telephone access by which to obtain a briefing, and to allow him an additional sixty days to amend his statements and schedules in compliance with BAPCPA.  In support of his Motion to Correct, containing a notarized Declaration Under

---

[1] The Verification of Creditor Matrix is dated September 28, 2005, while the remainder of the Debtor's documents are dated September 23, 2005.

Oath and under penalty of perjury, the Debtor submitted two exhibits:  (1) U.S. Postal Service Certified Mail Receipt #7005 3090 0004 6833 6264 evidencing that on October 14, 2005, the U.S. Postal Service accepted mail addressed to "Clerk, U.S. Bankruptcy Court, 800 Market St., Suite 330, Knoxville, TN 37902;" and (2) a return receipt card addressed to the Debtor, evidencing that certified mail #7005 0390 0004 6833 6264 was delivered to "Clerk, U.S. Bankruptcy Court, U.S. Courthouse, 800 Market St., Suite 330, Knoxville, TN 37902."[2]

## II

BAPCPA, which became effective on October 17, 2005, significantly changed the Bankruptcy Code by revising, deleting, and adding many requirements, including the necessity for any individual debtor to obtain a consumer credit counseling briefing from an approved non-profit budget and credit counseling agency.  *See* 11 U.S.C. § 109(h)(1).  Accordingly, this requirement is in place for any individual filing for bankruptcy under any chapter on or after October 17, 2005.  Conversely, any individual filing for bankruptcy prior to October 17, 2005, is not subject to this mandatory consumer credit counseling requirement.

"A voluntary case under a chapter of [title 11] is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under

---

[2] The date of delivery was not noted on the return receipt card, nor is the post office date stamp on the return to sender side legible.

such chapter." 11 U.S.C. § 301(a) (2005).[3] Additionally, pursuant to the Federal Rules of Bankruptcy Procedure, "[a] petition commencing a case under the [Bankruptcy] Code shall be filed with the clerk." FED. R. BANKR. P. 1002(a). Generally, "file" is defined as "deliver[ing] a legal document to the court clerk . . . for placement into the official record [or] . . . commenc[ing] a lawsuit[.]" BLACK'S LAW DICTIONARY 642 (7th ed. 1999).

The face of the Debtor's Voluntary Petition contains a stamp evidencing that it was "filed" on October 17, 2005, at 11:43 a.m.[4] There is no dispute that the Debtor mailed his bankruptcy documents to the court clerk's office, so the date and time stamp references the date and time that the clerk's office received the Debtor's mailing. By the usual definition of "file," the Debtor's case was commenced on October 17, 2005, when the deputy clerk received the Voluntary Petition in the clerk's office.

However, as the Debtor argues in his Motion to Correct, the Supreme Court has promulgated a different procedural rule concerning documents to be filed by prisoners representing themselves pro se. Under the "prisoner mailroom or mailbox filing rule," a document to be filed by a pro se prisoner is deemed "filed" with a court on the date the prisoner delivers the document to prison officials for forwarding to the court. *Houston v. Lack*, 108 S. Ct. 2379, 2382 (1988). In explanation, the Court stated the following, with respect to that particular prisoner's notice of appeal on habeas corpus:

---

[3] This statute was not substantively amended by BAPCPA.

[4] The court has taken judicial notice of the Debtor's entire bankruptcy case file. *See* FED. R. EVID. 201.

5

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. Pro se prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access -- the prison authorities -- and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Houston*, 108 S. Ct. at 2382-83. "Fundamentally, the rule in *Houston* is a rule of equal treatment; it seeks to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome. It sets forth a bright line rule -- that filing occurs when the petitioner delivers his pleading to prison authorities for forwarding to the court clerk." *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 745 (4th Cir. 1991). In order

to validly assert the mailbox rule, a prisoner must meet the following requirements: (1) he or she must be proceeding pro se; and (2) he or she must deliver the documents to be filed "to prison authorities for forwarding to the court within the limitations period." *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).

The court has been unable to find any precedent concerning the application of the prisoner mailbox rule for the filing of a bankruptcy petition; however, most of the circuit courts, including the Sixth Circuit, have extended the *Houston* rule to apply in civil actions. *See Price v. Philpot*, 420 F.3d 1158, 1164 (10th Cir. 2005) (applying the rule to include complaints initiating a 42 U.S.C. § 1983 case); *Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir. 2005) (applying the rule to toll the statute of limitations in AEDPA cases); *Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003) (holding that "the prison mailbox rule governs the determination of when a prisoner's civil complaint has been filed."); *Casanova v. Dubois*, 304 F.3d 75, 79 (1st Cir. 2002) (§ 1983 cases); *Richard v. Ray*, 290 F.3d 810, 813 (6th Cir. 2002) (applying the rule "to civil complaints filed by pro se petitioners incarcerated at the time of filing."); *Edwards v. United States*, 266 F.3d 756, 758 (7th Cir. 2001) (applying the rule to motions filed pursuant to Federal Rule of Civil Procedure 59(e)); *Cooper v. Brookshire*, 70 F.3d 377, 380 (5th Cir. 1995) (applying the rule to the filing of pro se complaints); *In re Flanagan*, 999 F.2d 753, 759 (3d Cir. 1993) (applying the rule to notices in bankruptcy appeals); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (§ 1983 actions); *Faile v. Upjohn Co.*, 988 F.2d 985, 988 (9th Cir. 1993) (applying the rule to civil

actions and service of process requirements); *Lewis*, 947 F.2d at 735-36 (applying the rule to civil actions in general).

Implicit in these courts' decisions to extend the prisoner mailbox rule is the wording of the various procedural rules and/or statutes concerning "filing" and/or "service." A primary consideration of the Supreme Court in *Houston* was the fact that the habeas corpus statute did not "define when a notice of appeal has been 'filed' or designate the person with whom it must be filed, and nothing in the statute suggests that, in the unique circumstances of a pro se prisoner, it would be inappropriate to conclude that a notice of appeal is 'filed' within the meaning of [28 U.S.C.] § 2107 at the moment it is delivered to prison officials for forwarding to the clerk of the district court." *Houston*, 108 S. Ct. at 2383. Moreover, with respect to the applicable Federal Rules of Civil Procedure, the Court stated that:

> Rules 3(a) and 4(a)(1) thus specify that the notice should be filed "with the clerk of the district court." There is, however, no dispute here that the notice must be directed to the clerk of the district court — delivery of a notice of appeal to prison authorities would not under any theory constitute a "filing" unless the notice were delivered for forwarding to the district court. The question is one of timing, not destination: whether the moment of "filing" occurs when the notice is delivered to the prison authorities or at some later juncture in its processing. The Rules are not dispositive on this point, for neither Rule sets forth criteria for determining the moment at which the "filing" has occurred.

*Houston*, 108 S. Ct. at 2383.

On the other hand, when the statute or administrative procedure expressly defines "filing" and/or "service," the prisoner mailbox rule does not apply. *See, e.g., Fex v. Michigan*, 113 S. Ct. 1085, 1090-91 (1993) (finding that the language of the Interstate Agreement on

Detainers expressly set forth and defined its delivery requirement); *Smith v. Conner*, 250 F.3d 277, 279 (5th Cir. 2001) (declining to apply *Houston* because 8 C.F.R. § 3.38 expressly stated that filing occurred upon receipt by the Board of Immigration Appeals); *Nigro v. Sullivan*, 40 F.3d 990, 994-96 (9th Cir. 1994) (holding that *Houston* did not apply because 28 C.F.R. § 542.14 expressly defined "filing" as being when a receipt was issued).

Based upon the wording of 11 U.S.C. § 301(a) and Rule 1002 of the Federal Rules of Bankruptcy Procedure, in conjunction with the Supreme Court's decision in *Houston*, the court finds that the prisoner mailbox rule applies, and the Debtor's Voluntary Petition is deemed filed on the date he delivered it to the prison officials for mailing to the court.[5] Section 301(a) does not state that filing occurs upon receipt by the court clerk; instead, it provides that a case is commenced upon the filing of a petition with the court. Similarly, Rule 1002 does not define "filing" as being upon receipt by the court clerk, but rather, simply states that a petition shall be filed with the clerk. Because neither the statute nor the procedural rule expressly define "filing," *Houston* controls, and the court must determine the date upon which the Debtor "filed" his bankruptcy petition under the prisoner mailbox rule; i.e., the date upon which he delivered the documents to the prison officials to be mailed to the bankruptcy court clerk.

In making this determination, the court has before it three pieces of evidence: the Debtor's Motion to Correct, which has been executed by the Debtor under penalty of perjury

---

[5] There is no dispute that the Debtor has proceeded pro se and is without the assistance of counsel in this matter.

and notarized, and the two certified mail receipts. The Debtor's Motion to Correct states that he gave his Voluntary Petition to prison officials for mailing on October 13, 2005; however, he agreed to stipulate to a filing date of October 14, 2005, as long as that date was prior to BAPCPA's effective date. *See* DEBTOR'S MTN. at p.2 ¶ I.A.2(a). The return receipt card does not contain a date; however, it verifies that the Debtor was the party who mailed documents to the court via certified mail #7005 0390 0004 6833 6264. *See* EX. B. The certified mail receipt itself, however, has an official postmark stamp of October 14, 2005. *See* EX. A. Taking the evidence as a whole, the court can conclude that the Debtor delivered his Voluntary Petition and other bankruptcy documents for filing to the prison officials at Brushy Mountain State Prison on October 14, 2005. Therefore, pursuant to *Houston* and its successors, the court must deem the Debtor's Voluntary Petition filed on October 14, 2005, and the court's docket will be amended to reflect the proper filing date.

Because the Debtor's bankruptcy case was filed before October 17, 2005, it is not governed by the Bankruptcy Code as amended by BAPCPA,[6] and accordingly, 11 U.S.C. § 109(h) does not apply to the Debtor's case. As this section has no application to the Debtor, he was not required to obtain pre-petition consumer credit counseling prior to filing his bankruptcy case, and the Motion to Dismiss filed by the U.S. Trustee shall be denied.

---

[6] Those few amendments to BAPCPA with an effective date prior to October 17, 2005, are not material to the Debtor's case or to the issue presently before the court.

An order consistent with this Memorandum will be entered.

FILED: December 12, 2005

                                BY THE COURT

                                */s/ RICHARD STAIR, JR.*

                                RICHARD STAIR, JR.
                                UNITED STATES BANKRUPTCY JUDGE